FAULKNER, Retired Justice.
Kevin R. Reeves was indicted for two counts of murder, in violation of § 13A-6-2, Code of Alabama 1975. The jury found Reeves guilty of the lesser included offense of criminally negligent homicide, and he was sentenced to 12 months’ imprisonment. Three issues are raised on appeal.
I
Reeves contends that the trial judge committed reversible error by failing to recuse himself from the trial of this case because the trial judge was a close friend of the district attorney and jointly owned real estate with the district attorney.
The Honorable A.P. Reich III, the circuit judge who presided over the trial of Reeves’s case, responded to defense counsel's motion for recusal at the outset of the trial:
“THE COURT: Let me take up the matter on the recusal first. All right, as to the Motion to Recuse as submitted, paragraph one dealing with the property interest that I would have with the District Attorney and another individual, for the record let me address this. First of all, as to the property interest, I am a minority shareholder in a corporation that owns approximately seventy-eight acres of land near where my home is, and as such, I occupy a very minority interest in that. I don’t feel that, in and of itself, is in any way a basis for recusal and preventing my hearing the case. I think that is consistent with the Canon of Judicial Ethics in the State, and further, opinions that have been rendered on repeated occasions by the Judicial Inquiry Commission, and I checked into that and sought direction before I even did this. Now, without getting into any other reasons, I don’t think that sitting of the Court in any way precludes my owning property. But as to the other basis, as to Mr. Littrell and myself enjoying a close friendship, we do. We do attend the same church and we have socialized together, and likewise, for the record, I enjoy a friendship with Mr. White who represents the defendant. He’s my neighbor; he lives two doors down from me; we go to the same church and we’re also in the same Sunday School Class. In spite of all of these things, the Court can be fair and will be fair and impartial in hearing the evidence presented and ruling on evidence and hearing the arguments and charging the jury.”
In the case of McMurphy v. State, 455 So.2d 924 (Ala.Cr.App.1984), we discussed the rules governing disqualification of a judge:
*51 “The general rule in Alabama is that there is a presumption that a judge is qualified and unbiased and a person who alleges otherwise has the burden of proving that grounds [exist] for his allegations. Schillaci v. State, 347 So.2d 556 (Ala.Cr.App.), cert. denied, 347 So.2d 559 (Ala.1977).
“The bias or prejudice which has to be shown before a judge is disqualified must be ‘personal’ bias, and not ‘judicial’ bias. Personal bias, as contrasted with judicial, is an attitude of extra-judicial origin, or one derived non coram judice. In re White, 53 Ala.App. 377, 300 So.2d 420 (1977). The fact that one of the parties before the court is known to and thought well of by the judge is not sufficient to show bias. Duncan v. Sherrill, 341 So.2d 946 (Ala.1977).”
455 So.2d at 929.
Reeves presented no evidence to indicate that Judge Reich’s friendship with the district attorney was tantamount to bias against Reeves. In point of fact, Judge Reich’s admission of his friendship with defense counsel nullified Reeves’s claim of bias based upon Judge Reich’s friendship with the district attorney.
Reeves likewise presented no evidence to indicate that Judge Reich’s minority ownership interest in a corporation in which the district attorney was also a shareholder was tantamount to bias against Reeves.
Neither Judge Reich nor the district attorney, Timothy D. Littrell, acting in his official capacity, had an interest that could be substantially affected by the outcome of Reeves’s trial. Canon 3 C(l)(d)(ii), Canons of Judicial Ethics. “[T]he ... district attorney’s ‘fee’ or salary was not dependent upon the result of the litigation, and from aught that appears in the record he had no interest other than his ‘pride in the successful outcome’ of the proceedings.” Davis v. State, 554 So.2d 1094, 1099 (Ala.Cr.App.1984), affirmed, 554 So.2d 1111 (Ala.1985). Judge Reich, moreover, was not interested in, or related to any party in, Reeves’s trial, within the meaning of § 12-1-12, Code of Alabama 1975, or Canon 3 C(l)(d)(ii), Canons of Judicial Ethics. Neither that Code section nor that canon mandated disqualification of Judge Reich in Reeves’s trial.
We note that Canon 5 C(l) of the Canons of Judicial Ethics provides that “[a] judge should refrain from financial and business dealings that tend to reflect adversely on his impartiality, interfere with the proper performance of his judicial duties, or exploit his judicial position.” Reeves, however, failed to present any evidence that Judge Reich’s ownership interest in the corporation reflected adversely on his impartiality in Reeves’s criminal trial. “While Canons of Judicial Ethics relating to a judge’s duty to disqualify himself [have] the force of law, both judges and the bar should be aware that recusal is not required on mere accusation of bias unsupported by substantial fact.” Whisenhant v. State, 555 So.2d 219, 223 (Ala.Cr.App.1988) aff’d, 555 So.2d 235 (Ala.1989), cert. denied, — U.S. -, 110 S.Ct. 3230, 110 L.Ed.2d 676 (1990). The trial court’s denial of Reeves’s motion to recuse was therefore proper.
II
Reeves contends that the trial court erred in refusing to ask the venire his requested voir dire questions. Because the trial court gave defense counsel the opportunity to ask the venire these questions, we find no such error.
“It is well settled that the trial court has discretion regarding how the voir dire examination of the jury venire will be conducted, and that reversal can be predicated only upon an abuse of that discretion.” Bui v. State, 551 So.2d 1094, 1110 (Ala.Cr.App.1989). In the jury selection process, each party has the right to have its questions asked to the venire, either by the court or by the party, as the court may determine, provided the questions reasonably relate to the qualifications or bias on the part of a prospective juror. Id.
In the case at bar, the trial court determined that defense counsel, and not the court, should ask the venire the requested voir dire questions. We have examined the complete voir dire of the jury in the instant case and the questions as submitted to the *52 trial court by Reeves, and we conclude that there was no abuse of discretion by the trial court in the manner in which the voir dire proceedings were conducted.
Ill
Reeves contends that the trial court erred in denying his motion for judgment of acquittal on charge of murder, manslaughter, and criminally negligent homicide. In particular, Reeves argues that the evidence was insufficient to support the jury’s verdict of criminally negligent homicide.
“A person commits the crime of criminally negligent homicide if he causes the death of another person by criminal negligence.” Section 13A-6-4, Code of Alabama 1975.
Section 13A-2-2(4), Code of Alabama 1975, defines criminal negligence as follows:
“... A person acts with criminal negligence with respect to a result or to a circumstance which is defined by statute as an offense when he fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation....”
“We held in Robinson v. State, 441 So.2d 1045 (Ala.Cr.App.1983), that a person who intentionally draws a gun in response to or in anticipation of a confrontation with another is aware of the risk that the gun might discharge and, therefore, could not be guilty of mere criminal negligence. See also Williams v. State, 506 So.2d 368 (Ala.Cr.App.1986); Wiggins v. State [491 So.2d 1046 (Ala.Cr.App.1986)]. We held in Wakefield v. State, 447 So.2d 1325 (Ala.Cr.App.1983), that a jury instruction on criminally negligent homicide was not warranted where the defendant contended that the decedent had threatened him with a pistol and that he was attempting to take the gun away from the decedent when it accidentally discharged. We stated that if the defendant was attempting to shoot the deceased, it could not be negligent homicide, and if he was not attempting to shoot the deceased and the pistol discharged accidentally, it would simply be an accident.”
Jones v. State, 514 So.2d 1060, 1065 (Ala.Cr.App.), cert. denied, 514 So.2d 1068 (Ala.1987).
The question before us is whether the state presented evidence from which the jury reasonably could have inferred that Reeves caused the death of Delta Danette Terry by criminal negligence.
Reeves testified that he and the victim began arguing about the victim’s possession of a photograph of an ex-boyfriend. Reeves testified that after the victim tore up the photograph, Reeves confronted the victim with photographs and entries of the victim’s former boyfriends contained in a scrapbook. Reeves testified that after the argument, he told the victim to take him home but that she refused because her cousin, Eric Pitt, had her car. Reeves testified that the victim then started pulling on him to keep him from going outside. Reeves said he then sat down in the living room and the victim went to the back of the house where she remained for about 15 minutes. According to Reeves, the victim returned from the back of the house holding the barrel of a pistol and demanded that Reeves kill her before he went anywhere. Reeves testified that he took the gun away from the victim, walked into the bathroom and took the clip out of the gun. Reeves testified that he was unfamiliar with pistols but that he noticed there were shells in the removed clip but that he did not know how to get them out. Reeves testified that he tried to leave the house with the pistol but that the victim hit him in the chest and screamed for him to kill her. Reeves testified that when he went to go around the victim, the gun went off and the victim fell. Reeves testified that he did not intentionally kill the victim.
Stacy Morgan, a former schoolmate of Reeves, testified that while he and Reeves were incarcerated in the county jail after the death of the victim, Reeves told Morgan that Reeves was having a big fight *53 with the victim, his girlfriend, and that while they were arguing, the victim brought a pistol to Reeves and told Reeves to aim it at her and pull the trigger. According to Morgan, Reeves said he then took the pistol from the victim, took the clip out without knowing that there was a bullet in the chamber, pointed the gun at the victim, pulled the trigger, and the gun went off, striking the victim in the face at point-blank range.
The present case is clearly distinguishable from Robinson and its progeny. Based upon the testimony of Reeves, Reeves was not aware of the risk that the gun would discharge. Reeves testified that he was not familiar with pistols; that he removed the clip from the pistol; and that he thought that after he removed the clip, the pistol was no longer loaded. Morgan’s testimony that Reeves, thinking the pistol was not loaded, intentionally pointed the pistol at the victim and pulled the trigger was clearly sufficient evidence from which the jury could conclude by fair inference that Reeves was guilty of criminally negligent homicide. See Kennedy v. State, 494 So.2d 792 (Ala.Cr.App.1986).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.